## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SEAN B.,

        Petitioner,

    v.

KEVIN K. MCALEENAN et al.,

        Respondents.

Civ. No. 19-10529 (KM)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

### I.    INTRODUCTION

Petitioner, Sean B.,[1] is an immigration detainee, held at the Hudson County Corrections Facility, in Kearny, New Jersey. He is proceeding by way of counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The government has answered the habeas petition, arguing that it must be dismissed for lack of jurisdiction.

This Court's jurisprudence has been guided by the principle that the courts must be afforded the opportunity to adjudicate litigants' rights in an orderly manner, and that the parties cannot, by unilateral action, interfere with that essential function of the courts. To vindicate that principle, I have in the past construed liberally the court's power to enter a limited stay in an immigration case, even where, in the end, I ruled in favor of the opponent of the stay. *See, e.g.*, *Ragbir v. United States*, No. 17-1256, 2018 WL 1446407 (D.N.J. Mar. 23, 2018) (ICE case, granting petitioner's application for stay but ultimately ruling in government's favor). Here that concern has particular poignance, because it has a particular constitutional dimension. The very reason that the immigration authorities may act without court intervention—

---

1    Consistent with guidance regarding privacy concerns in social security and immigration cases by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Petitioner is identified herein only by his first name and last initial.

*i.e.,* the reason that the court may permissibly be stripped of habeas jurisdiction—is the existence of an alternative remedy, namely a process of administrative review culminating in review by the Court of Appeals. Here, however, the immigration authorities have acted in such a manner (I do not say with the intention) that the effectiveness of Court of Appeals review is compromised. Under the peculiar circumstances of this case, the Suspension Clause of the U.S. Constitution requires that this Court retain a minimal level of residual habeas jurisdiction.

For clarity, and to assist in review, I offer a schematic view of the logic that leads me to that result:

1. A petitioner seeking to reopen removal proceedings will seek such relief from an immigration judge (IJ) and can administratively appeal an adverse result to the Board of Immigration Appeals (BIA).[2]

2. While the matter is pending in the agency, the petitioner may seek a stay of removal from the IJ or the BIA. If such an administrative stay is denied, a petitioner may be removed from the country before his petition is adjudicated by the agency. That result, while sometimes harsh, is ordinarily permissible; the Supreme Court has held that the petitioner may be required to pursue his application from abroad, subject to repatriation should the application ultimately be granted.[3]

3. If a petitioner files an appeal from a final decision of the BIA, jurisdiction lodges in the relevant U.S. Court of Appeals. It is only at that point that the Court of Appeals is empowered to enter its own stay of removal pending appeal.[4] As noted in paragraph 2, however, a

---

[2] In this petitioner's case, those administrative proceedings are occurring in New York. He is, however, confined in New Jersey, so this habeas proceeding is venued here.

[3] While this may have occurred, I have not been directed to any example.

[4] Again, because administrative proceedings are ongoing in New York, any such appeal would go to the U.S. Court of Appeals for the Second, not the Third, Circuit. Once an appeal is filed, stays pending appeal are fairly common. Both sides assume that the Court of Appeals would lack jurisdiction to issue a stay in connection with

petitioner denied an administrative stay may already have been deported.

4. The Real ID Act, 8 U.S.C. § 1252(g), strips the U.S. courts of habeas (or any other) jurisdiction to interfere with the agency's execution of a removal order. So while immigration proceedings are pending, the statute bars a district court from granting a stay of removal.

5. The jurisdiction-stripping effect of § 1252(g) is subject to one Constitutional limitation, however. It may not rise to the level of a suspension of the writ of habeas corpus. U.S. Const., art. I, § 9, cl.2.

6. An impermissible suspension of habeas corpus will not be found so long as there is an adequate alternative remedy available. Cases upholding the review scheme summarized above as adequate have relied on the ultimate availability of review in the Court of Appeals. In the vast majority of cases, the § 1252(g) removal of habeas jurisdiction has been found constitutionally valid.

7. Under limited circumstances, however, cases have held that the available alternatives to district court habeas review are not adequate (or not available at all). Under such circumstances, the district court has been found to retain limited habeas jurisdiction, as a constitutional necessity.

8. I find that this is such a case. Petitioner's order of removal was entered in 2009, but he then pled guilty to drug-trafficking charges and became a cooperating witness in the criminal prosecution of a prominent Jamaican drug kingpin. In 2013, the government released him and withheld execution of the order of removal. In January 2019, however, he was placed in custody by ICE for the purpose of executing the 10-year-old order of removal to Jamaica.

---

pending administrative proceedings, whether by mandamus or otherwise. *See* nn. 6 & 7, and cases cited.

9. Petitioner's primary motivation for reopening removal proceedings is that, since his order of removal, his cooperation has exposed him to a realistic threat of being killed if he is returned to Jamaica. The person against whom he testified wielded great influence there.[5] Since Petitioner's testimony, his sister's house was burned down, the house of his children's mother was bombed, six of his cousins have been murdered, and his father was forced to flee the country. He claims that during his recent enforced sojourn in Jamaica, before the court ordered his return, his safety was threatened. The government does not factually rebut these allegations, which I therefore take at face value for present purposes.

10. The IJ denied Petitioner's application to reopen removal proceedings. His appeal to the BIA is still pending. Both the IJ and BIA denied motions to stay. There is no final order, so the Court of Appeals does not yet have jurisdiction. Absent a court order, then, Petitioner may be removed, even though his matter remains pending. In short, he is to be removed to a country where he says he is likely to be killed while the propriety of removing him to such a place is being decided.

11. Under these unusual circumstances, the "adequate alternative" to habeas relief—review by the BIA and appeal to the Court of Appeals— is not an effective alternative, *unless* supplemented by a stay of removal. To deny habeas relief under such circumstances would amount to a suspension of the writ. I find, therefore, that I have limited jurisdiction to enter a stay.

---

[5] As background, I take notice that Mr. Coke was the head of an extremely violent drug gang active in Jamaica, the United States, and elsewhere. Efforts to extradite him sparked what amounted to an armed insurrection that cost 70 lives. A sample of news coverage of his conviction and sentence may be found at https://www.nytimes.com/topic/person/christopher-coke. The Immigration Judge opined that the threat was stale, but the criminal organization involved, the Jamaican Shower Posse, apparently remains active.

12. The minimum necessary to meet constitutional standards, I find, is a "bridge" stay sufficient to hold off removal until the BIA grants Petitioner's requested relief or the Court of Appeals takes jurisdiction over an appeal from a final BIA decision.

## II.   BACKGROUND AND PROCEDURAL HISTORY

Petitioner is a native and citizen of Jamaica. After being twice removed from the United States, Petitioner was arrested for illegal entry in 2009 and again ordered removed later that year. This time he was not actually removed. Instead, he pled guilty to drug-trafficking charges and became a cooperating witness in the federal government's criminal prosecution of then then-head of a violent Jamaican drug gang, Christopher "Dudus" Coke. Apparently he testified under an alias, an unusual procedure and one indicative of a government belief that he was in danger. Following Petitioner's cooperation, the government granted him deferred action, released him, and permitted him to work in the United States from October 2013 until early 2019. On January 15, 2019, however, the Department of Homeland Security, Immigration and Customs Enforcement, ("ICE") placed Petitioner in immigration custody for the purpose of executing his long-deferred removal order.

Petitioner moved before an immigration judge ("IJ") to reopen his removal proceeding, asserting materially changed circumstances and seeking asylum.[6]

---

[6]    The United States District Court for the District of New Hampshire has usefully summarized the procedural background of a motion to reopen.

> Congress has granted aliens facing a removal order the right to file a single motion to reopen removal proceedings within 90 days of the entry of a removal order. 8 U.S.C. § 1229a(c)(7). Aliens also are entitled to obtain judicial review in the courts of appeals from decisions denying motions to reopen. *Mata v. Lynch*, _U.S._,135 S.Ct. 2150, 2154, 192 L.Ed.2d 225 (2015). As the Supreme Court has explained, the right to file a motion to reopen is "an 'important safeguard' intended 'to ensure a proper and lawful disposition' of immigration proceedings." *Kucana v. Holder*, 558 U.S. 233, 242, 130 S.Ct. 827, 175 L.Ed.2d 694 (2010) (quoting *Dada v. Mukasey*, 554 U.S. 1, 18, 128 S.Ct. 2307, 171 L.Ed.2d 178 (2008)). The First Circuit Court of Appeals underscored the importance of this right in *Santana v. Holder*, 731 F.3d 50, 61 (1st Cir. 2013), where the court concluded that an alien's statutory right to litigate a motion to reopen could not be curtailed by regulations that both

The IJ denied the motion to reopen as untimely. (*See* DE 14-4). The IJ further found that Petitioner had failed to demonstrate changed country circumstances or grounds for granting asylum or withholding of removal under the Convention Against Torture. (*See id.*).

Petitioner filed an appeal and an application to stay removal pending appeal with the Board of Immigration Appeals ("BIA"). On April 12, 2019, the BIA denied Petitioner's request for a stay, finding little likelihood of success on appeal. (*See* DE 14-5). It seems the BIA has not yet ruled on the merits of Petitioner's appeal. The parties seem to agree that, although the Court of Appeals will have jurisdiction over any appeal from the final decision of the BIA, and may, once it has taken jurisdiction, issue a stay pending appeal, it lacks the current power to hear an appeal from the BIA's denial of a stay.[7]

---

barred the filing of motions to reopen after removal and deemed existing motions to be withdrawn once an alien is removed.

The filing of a motion to reopen in the BIA does not automatically stay proceedings. 8 C.F.R. § 1003.2(f). An alien, however, may request an emergency stay of removal. *See* BIA Practice Manual §§ 6.4(b), 6.4(d)(i), 1999 WL 33435431 at *2-3. An emergency stay request is discretionary and "may be submitted only when an alien is in physical custody and is facing imminent removal." BIA Practice Manual § 6.4(d)(i), 1999 WL 33435431 at *3. Further, because judicial review in the court of appeals is "available only in judicial review of a final order," an alien may not appeal the denial of an emergency motion to stay. 8 U.S.C. § 1252(b)(9); *Gando-Coello v. I.N.S.*, 857 F.2d 25, 26 (1st Cir. 1988) (holding, under previous immigration statute, that circuit court jurisdiction is limited to review of "final orders of deportation," and that "a denial of a stay of deportation pending disposition of a motion to reopen is not a 'final order'") (citing 8 U.S.C. § 1105a(a)). For the same reason, an alien cannot file with the court of appeals a motion to stay pending the BIA's disposition of a motion to reopen. In other words, whether or not an alien files an emergency motion to stay with the BIA, and whether or not the BIA acts on such a motion, the court of appeals is without jurisdiction to entertain a request to stay in connection with a motion to reopen pending before the BIA.

*Compere v. Nielsen*, 358 F. Supp. 3d 170, 179–80 (D.N.H. 2019).

[7]  Citing 8 U.S.C. § 1252(a)(1) and (b)(3)(B), the Government also argues that the federal courts of appeals "have ample authority to halt the execution of a removal order." Docket No. 68 at 7. But that is not true, because the circuit courts only have jurisdiction over a denial of a motion to reopen, *see Gando–Coello*, 857 F.2d at 26 (holding that court of

6

Thus ICE, unless restrained in some manner, is free to deport Petitioner at any time, and has demonstrated a determination to do so.

On April 16, 2019, acting through counsel, Petitioner filed a petition for writ of habeas corpus in the United States District Court for the Southern District of New York. Two days later, District Judge Paul A. Engelmayer determined that this was the wrong venue for Petitioner's habeas claims. Although immigration proceedings were centered in New York, Petitioner was detained in New Jersey when the petition was filed. Accordingly, Judge Engelmayer transferred the proceeding to this Court.

Petitioner then filed a motion seeking a temporary restraining order barring the respondents from removing him from the United States. (DE 12). Petitioner argued that, because of his cooperation in the Dudus prosecution, he would likely be killed if he is returned to Jamaica. He alleges that Dudus exercised extensive control over parts of Kingston, over the police, and over a major political party in Jamaica; that Dudus's aunt threatened him during the trial; and that, since his testimony, his sister's house was burned down, the house of his children's mother was bombed, six of his cousins have been murdered, and his father was forced to flee the country. The government has not submitted any factual refutation of Petitioner's allegations regarding the danger he would be exposed to upon his return to Jamaica.

On May 29, 2019, I issued an order granting Petitioner's motion for a temporary restraining order and temporarily staying removal pending further briefing by the litigants and a determination as to the Court's jurisdiction. The order was not entered on the clerk's docket until the following day, May 30,

---

appeals' jurisdiction does not attach until there is a final administrative order), which can happen after removal, see Diaz v. Sessions, No. 17-3669, 2018 WL 443879, at *2 (6th Cir. Jan. 17, 2018) (noting that BIA denied petitioner's motion to reopen approximately one month after she was removed to Mexico). As the Government acknowledges, meaningful judicial review is critical to a finding that a statutory scheme provides an adequate substitute for habeas relief. See St. Cyr, 533 U.S. at 314 n.38, 121 S.Ct. 2271.

Devitri v. Cronen, 289 F. Supp. 3d 287, 294 (D. Mass. 2018).

2019. Meanwhile, on the morning of May 30, before the government had received notice of the temporary restraining order, Petitioner was removed to Jamaica. I ordered Petitioner to be returned safely to the United States, and he was returned as of June 2, 2019. It seems he has remained in immigration custody since that time.

A briefing schedule was set. At the court's request, Petitioner's counsel submitted a supplemental letter brief on the issue of the Court's jurisdiction on June 4, 2019. (DE 26). The government filed a response to the habeas petition focused primarily on the jurisdictional issue on June 28, 2019. (DE 27). Petitioner did not file any reply within the time permitted.

### III.    ARGUMENTS AND ANALYSIS

#### A. Habeas Jurisdiction Generally

"Federal courts are not courts of general jurisdiction" and that they "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Congress has granted the federal courts much of their jurisdiction, and Congress has the power to limit that jurisdiction, so long as the result is not unconstitutional. *See Patchak v. Zinke*, 138 S. Ct. 897, 907–08 (2018).

Generally, a district court may exercise jurisdiction over a habeas petition, under 28 U.S.C. § 2241, when the petitioner is in custody and alleges that this custody violates the constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). A petitioner must typically seek § 2241 relief in the district in which he is in custody. *United States v. Figueroa*, 349 F. App'x 727, 730 (3d Cir. 2009). Petitioner was detained within this district when he filed his habeas petition and, as the District Court for the Southern District of New York concluded, this Court is the proper one to hear Petitioner's core habeas claims. (*See* DE 7).

**B. The Parties' Arguments Regarding Jurisdiction in this Case**

Unlike most habeas petitioners in the custody of ICE, Petitioner here raises no direct challenge to the propriety of his confinement *per se*.[8] Instead, the petition asks the Court to bar Petitioner's removal pending the BIA's review of the IJ's denial of Petitioner's motion to reopen. (*See* Pet., DE 17). In the words of the petition, "Petitioner asks this Court to review whether ICE has the legal authority to remove Petitioner pursuant to a valid removal order without first affording him the opportunity to have his claims heard in an immigration court as permitted by DHS regulations." (*Id.* ¶ 22). The petition asserts two claims: (1) that "execution of the removal order would strip Petitioner of his right to seek agency review and thereby violate his due process rights" and (2) that "execution of the removal order would violate petitioner's rights under the [Administrative Procedure Act]." (*Id.* at ¶¶ 26–30).

The government argues in opposition that 8 U.S.C. § 1252(g) deprives this Court of jurisdiction to enjoin the agency's execution of a removal order. (DE 14 at 3). It asserts that Petitioner had failed to establish any right to relief under the Refugee Act of 1980 or any "constitutional right to be free from detention during the pendency of an appeal of a denial of a discretionary motion to reopen." (*Id.* at 3–4). It contends that the BIA, not this Court, is the proper entity to review the IJ's denial of Petitioner's application to reopen his case or to determine whether a stay of removal is warranted. (*Id.* at 4). It further argues that Petitioner had failed to identify a constitutional right implicated by his potential removal. (*Id.*).

In his supplemental brief regarding jurisdiction, Petitioner contends that the government fails to "precisely specify how this Court is stripped of jurisdiction pursuant to the REAL ID Act." (DE 26 at 2). He asserts that the cases relied upon by the government are distinguishable, and that the Supreme Court has emphasized the narrow scope of the jurisdiction-stripping

---

[8]     Although the petition contains a boilerplate list of forms of relief, including supervised release from custody or a bond hearing, the rest of the petition presents no legal or factual basis for awarding such relief. (*See* DE 17).

provisions of § 1252. (*Id.* at 2–4, 7–8). He urges that "[s]ection 1252(g) does not apply to a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that question forms the backdrop against which the Attorney General will later exercise discretionary authority." (*Id.* at 8–9). Petitioner claims that he is not challenging the government's discretion in executing removal orders, but instead challenges the legal authority to execute a removal order while he "has an alleged right to seek relief made available." (*Id.*). Petitioner concludes that "[w]hether Respondents' actions were legal is not a question of discretion, and, therefore, falls outside the ambit of § 1252(g)." (*Id.*).

In its answer to the petition, the government reiterates that this Court is barred by § 1252 from exercising any jurisdiction over Petitioner's claims. (*See* DE 27). It specifically contends that § 1252 bars review of the constitutionality of discretionary determinations. (*Id.* at 6). The government asserts that the Suspension Clause applies only to core applications of the writ of habeas corpus and that, as Petitioner challenges his removal rather than his detention, he is not protected by the Suspension Clause. (*Id.* at 10–11).

## C. Background of § 1252(g)

The government, citing 8 U.S.C. § 1252(g), asserts that "Petitioner's last-minute attempt to halt his removal is precisely the type of claim that Congress sought to bar." (*See* DE 14 at 2–3). I agree that § 1252(g) is the provision most relevant to jurisdiction over Petitioner's claims.[9]

Historically, non-citizens could raise legal challenges to removal orders by way of habeas petitions. *See INS v. St. Cyr*, 533 U.S. 289, 306–10 (2001). In 1996, however, Congress curtailed that jurisdiction by enacting the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") and the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"). *See* AEDPA, Pub. L. No. 104-132, §§ 401–443, 110 Stat. 1214, 1258–81 (1996); IIRIRA, Pub.

---

[9]     The government makes tangential mentions of other paragraphs of the statute, but they are not central to the analysis here.

L. No. 104-208, §§ 304–307, 110 Stat. 3009, 3009-587 through 3009-614 (1996). These acts together largely eliminated a district court's jurisdiction to review a removal order, in effect channeling review to the BIA and ultimately the Courts of Appeals. *See* 8 U.S.C. § 1252(a). The original version of 8 U.S.C. § 1252(g), enacted at that time, read as follows:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

IIRIRA, § 306, 110 Stat. at 3009-607 through 3009-612.

Shortly thereafter, the Supreme Court considered the impact of these amendments upon habeas jurisdiction, in *St. Cyr*, 533 U.S. 289. Applying the doctrine of constitutional avoidance, *St. Cyr* declined to construe § 1252 as limiting habeas jurisdiction, to avoid a conflict with the Suspension Clause. Section 1252, the Court held, did not "speak with sufficient clarity to bar jurisdiction pursuant to the general habeas statute." *See id.* at 298–304, 312–134.

Thereafter, Congress enacted the Real ID Act of 2005 ("Real ID"), which modified the provisions of § 1252 to specifically remove jurisdiction under 28 U.S.C. § 2241, as well as any other sort of habeas jurisdiction. *See* Real ID, Pub. L. No. 109-13, § 106, 119 Stat. 231, 310–11 (2005). As amended, § 1252(g) now reads as follows:

> Except as provided in this section and notwithstanding any other provision of law *(statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title*, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis of amendment added). There is now no question that Congress intended this law, and other parts of § 1252 similarly modified, to limit habeas jurisdiction.[10]

## D. Applicability and Constitutionality of § 1252(g)

Petitioner here argues that § 1252(g) does not preclude this court's jurisdiction, for two reasons: (1) the statutory bar to jurisdiction must be narrowly construed in a manner that does not encompass his claims; and (2) that even if it does encompass his claims, such a restriction of habeas jurisdiction would violate the Suspension Clause of article 1 of the Constitution.

### 1. Narrow Statutory Construction

I first address the Petitioner's narrow-construction argument. (*See* DE 26 at 3–4, 8). I find that the statute, on its face, does purport to remove habeas jurisdiction over Petitioner's claims.

In *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999) (hereinafter, "*AADC*"), the Supreme Court rejected the interpretation of § 1252(g) as a "zipper clause" that covered "all or nearly all deportation claims." *Id.* at 478–87. Instead, it held that § 1252(g) "applies only to three discrete actions that the Attorney General may take," which are identified by the statute. *Id.* at 482. The section 1252(g) bar, the Court held, bars challenges to "the decision or action by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under [chapter 8]." *Id.*

Narrow the categories may be, but I conclude that Petitioner's claims fall within one of them: the bar against review of the Attorney General's "decision or action" to "execute removal orders." The primary, perhaps only, goal of this petition is to halt the execution of a removal order. (*See* DE 17 at pp. 8–10).

---

[10]    Real ID did not, however, close all avenues of review. It relegated judicial review of constitutional and legal questions to the Courts of Appeals, to avoid the potential constitutional Suspension Clause issues identified by the Supreme Court in *St. Cyr*. *See* Real ID Act § 106 (codified at 8 U.S.C. § 1252(a)(2)(D)).

Petitioner does not legitimately call into question the validity of the issuance of the 2009 order for his removal, nor does he raise any arguments concerning the propriety of his confinement.[11] (*See id.*). As to this narrow point, I follow the reasoning of the Courts of Appeals for the Second and Sixth Circuits. *See Ragbir v. Homan*, 923 F.3d 53, 63–66 (2d Cir. 2019);[12] *Hamama v. Adducci*, 912 F.3d 869, 874–75 (6th Cir. 2018) ("Under a plain reading of the text of the statute, the Attorney General's enforcement of long-standing removal orders falls squarely under the Attorney General's decision to execute removal orders and is not subject to judicial review.").[13]

Petitioner argues that § 1252(g) "does not apply to a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that question forms the backdrop against which the Attorney General will later exercise discretionary authority." (DE 26 at 8). Elaborating, he proposes a statutory distinction between administrative decisions and administrative actions:

> [H]ere, the habeas petition does not challenge the discrete *decision* to remove Petitioner. The question before the Court is not why the Secretary chose to

---

[11]    I note that, in his supplemental brief concerning jurisdiction, Petitioner additionally asserts that he should be considered eligible for a reasonable-fear interview by immigration officials. (DE 26 at 11). As this was not asserted in his petition, I do not consider it as a claim before the Court.

[12]    As discussed further below, the Second Circuit ultimately concluded that the Suspension Clause required that the district court exercise jurisdiction to hear Ragbir's claims because, although § 1252(g) facially limited such jurisdiction, the government had not disputed Ragbir's assertion that there existed no adequate alternative to habeas relief under the peculiar circumstances of that case. *See Ragbir*, 923 F.3d at 73–74 & n.27.

[13]    Petitioner might frame his claim as a challenge, not to the execution of the removal order, but to the agency's revocation of its decision to defer action on that order. The distinction does not persuade, and I believe that the 1252(g) bar would still apply. The very case that Petitioner cites to in support of the proposition that revocation of deferred action implicates due-process rights also explicitly found "that 8 U.S.C. § 1252(a)(4) . . . precludes the District Court from exercising jurisdiction over [such a] habeas petition." *Khouzam v. Att'y Gen. of U.S.*, 549 F.3d 235, 245 (3d Cir. 2008). Accordingly, any such claim would have to be raised on appeal to the Court of Appeals, not in a habeas petition.

> execute the removal order. Rather, the question is
> whether the way Respondents *acted* accords with the
> Constitution and the laws of this country. Whether
> Respondents' *actions* were legal is not a question of
> discretion, and, therefore, falls outside the ambit of
> § 1252(g).

(*Id.* (emphasis added)). This suggested distinction, I find, is not supported by the statutory language or the relevant case law.

First, Petitioner's argument that the statute applies only to the *reasoning underlying* a decision but not to the *actions* of ICE in executing a removal order runs contrary to the language of § 1252(g). Section 1252(g) explicitly applies to a "decision **or** action" to "***execute*** [a] removal order[]." (emphasis added). Petitioner's interpretation would render the phrase "or action" superfluous, a result disfavored under ordinary principles of statutory construction. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992).

Second, the cases cited by Petitioner do not support his interpretation. In this connection, Petitioner cites *United States v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004), and *Garcia v. Attorney General*, 553 F.3d 724 (3d Cir. 2009). (DE 26 at 8). It is true that in *Hovsepian*—perhaps the inspiration for Petitioner's argument here—the U.S. Court of Appeals for the Ninth Circuit stated that "[t]he district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question—a description of the relevant law—forms the backdrop against which the Attorney General later will exercise discretionary authority." 359 F.3d at 1155. The context of that case, however, demonstrates that it is largely irrelevant to the circumstances here. In *Hovsepian*, two men faced imminent deportation because recent amendments had rendered deportable their previously non-deportable offenses of conviction. In the district court, they sought a retroactive change to their sentences under the Federal Youth Corrections Act, for which they would have been eligible at the time of their convictions. If the prior sentences were changed as requested, they would not

expose them to deportation, even under the statutes as amended. *See id.* at 1147–50. The district court set aside the prior convictions, sealed the relevant criminal records, and granted a motion by Hovsepian to enjoin the government from deporting him. *Id.* at 1150–51. True, the Ninth Circuit affirmed the district court's jurisdiction to issue its injunction, which involved a "pure legal question." *Id.* at 1155–56. The reason, however, did not involve the distinction between "decisions" and "actions" that is proposed here. What was critical in *Hovsepian* was not merely that the issue could be deemed "legal"; the court's point was that the "legal question" was one of federal criminal law and procedure—not, as in this case, the permissibility of the immigration authorities' actions as such. Because the petitioners (albeit *nunc pro tunc*) were not convicted of a deportable offense, non-deportability was the result of, but not the foundation of, their claim before the district court.[14]

Petitioner also points to *Garcia* case, a reported decision by the U.S. Court of Appeals for the Third Circuit. *Garcia,* of course, is binding, but less relevant. It was a direct petition to the Court of Appeals for review of a final BIA order of removal, as expressly authorized by 8 U.S.C. § 1252(b). *See Garcia,* 553 F.3d at 726. The BIA had rejected Garcia's argument that the removal proceedings were untimely under the applicable five-year statute of limitations. *Id.* at 726–27 (citing *Bamidele v. INS,* 99 F.3d 557 (3d Cir. 1996)). The Court of

---

[14]     Compare *Ragbir v. United States,* No. 17-1256, 2018 WL 1446407 (D.N.J. Mar. 23, 2018). In that case, the petitioner (the same Mr. Ragbir who was the petitioner in the Second Circuit case already cited herein) filed a petition for writ of *coram nobis,* seeking to overturn the criminal conviction that had rendered him removable under immigration law. *See id.* Thus, as in *Hovsepian,* his *motive* was to undermine the grounds for removal, but the *claim* itself was a challenge to a criminal conviction, not to any actions of the immigration authorities. I granted a motion by Ragbir to stay his removal pending resolution of the *coram nobis* claim, finding, among other things, that the Court had the inherent power to preserve its jurisdiction over a *coram nobis* case. *See id.* at *7–*12. I rejected the government's arguments that § 1252(g) deprived the Court of jurisdiction to grant such a stay, reasoning that Ragbir's claim did not "arise from" any immigration proceeding and because the question of whether Ragbir was guilty of a removable offense was "a question not of executive discretion but of legal and judicial status under the criminal law." *Id.* "To look at it another way," I wrote, "neither the *coram nobis* application nor the stay application is an attempt to review any action taken by the executive." *Id.* at *10.

Appeals reversed and remanded to the BIA, finding that *Bamidele*'s interpretation of the statute of limitations issue should have been applied. *Id.* at 728, 729. In doing so, it rejected the government's argument that § 1252(g) precluded review. The application of the statutory limitations period, the Third Circuit reasoned, did not challenge the Attorney General's discretion. *Id.* at 728–29. Citing *AADC*, *Garcia* concluded that § 1252(g) "has nothing to do with petitions for review of final orders of deportation, or indeed with any sort of review of such orders." *Id.* (quoting *Shah v. Reno*, 184 F.3d 719, 722 (8th Cir. 1999)). Thus, *Garcia* held that the § 1252(g) jurisdictional bar did not apply, because "Garcia is not challenging the discretionary *decision* to commence proceedings, but is challenging the government's very *authority* to commence those proceedings after the limitation period has expired." *Id.* at 729.

Context, again, is key. The *Garcia* Court, under Section 1252, possessed jurisdiction to review the agency's final orders of removal. It was reversing as legally erroneous a final agency decision, affirmed by the BIA, that misapplied binding authority, namely *Bamidele*. Here, by contrast, Petitioner has filed a habeas petition asking this Court to directly bar the government from executing a facially valid (if old) removal order in an ongoing matter.[15]

Petitioner's proposed differentiation between administrative decisions and actions is not sustainable. Many a challenge to an immigration action could readily be reframed as a "pure legal question." On the other hand, an exercise of discretion, with no relevant legal question implicated, might not trigger habeas review at all; a habeas claim under § 2241 typically depends on an allegation that the government's conduct is "in violation of the *Constitution or laws or treaties* of the United States." 28 U.S.C. § 2241(c)(3) (emphasis added).

---

[15] In support of his argument that § 1252(g) permits review of purely legal questions that do not challenge discretionary decisions, Petitioner additionally cites to the oral argument in a case in this District, *Tazu v. Barr*, No. 19-7872. I note that District Judge Esther Salas denied Tazu's request to stay his removal pending the adjudication of his motion to reopen, finding that he lacked any right to a final reopening decision before removal. *See Tazu*, No. 19-7872, DE 39 at 5–9.

Petitioner correctly observes that the Supreme Court in *AADC* construed § 1252(g) to apply narrowly to three situations. This is one of them. *AADC* itself concluded that § 1252(g), however narrowly construed, eliminated jurisdiction over the plaintiffs' claims that the commencement of removal proceedings against them violated their constitutional rights. *See AADC*, 525 U.S. at 475, 487; *see also Ragbir*, 923 F.3d at 64–66 (rejecting argument that § 1252(g) does not apply to constitutional claims). I therefore conclude that the § 1252(g) bar, as a matter of statutory construction, applies to claims challenging the decision or action of the Attorney General (or a designee) to execute a removal order, and that Petitioner's habeas claims here fall within that statutory limitation on jurisdiction.

### 2. Constitutionality Under the Suspension Clause

I therefore move to the second, constitutional step of the analysis. Petitioner argues that, if § 1252(g) is interpreted to remove habeas jurisdiction here, the result will be an unconstitutional suspension of the writ of habeas corpus.

The Suspension Clause reads as follows: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. CONST. art I, § 9, cl. 2. If, as here, a statute is found to remove jurisdiction over a petitioner's habeas claim, the Court must then determine whether "Congress has provided adequate substitute procedures for habeas corpus." *Boumediene v. Bush*, 553 U.S. 723, 771 (2008); *see also Osorio-Martinez v. Att'y Gen. of U.S.*, 893 F.3d 153, 166 (3d Cir. 2018); *Castro v. DHS*, 835 F.3d 422, 445 (3d Cir. 2016), *cert. denied*, 137 S. Ct. 1581 (2017). If such "adequate substitute procedures" are in place, the removal of habeas jurisdiction does not offend the Suspension Clause.

### (a) Application of Suspension Clause to removal

A threshold issue is whether the Suspension Clause even applies to an application, not for release from illegal confinement (the traditional concern of the habeas remedy), but instead to bar Petitioner's removal from the country.

(*See* DE 27 at 10–11). The government asserts that "Petitioner does not seek a traditional exercise of habeas jurisdiction that is protected by the Suspension Clause and it thus does not even come into play in this case." (*Id.*).

The Supreme Court began its analysis of the Suspension Clause in *St. Cyr* with the statement that "[a]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *St. Cyr*, 533 U.S. at 301. In *Munaf v. Geren*, 553 U.S. 674 (2008), the Supreme Court, albeit in dissimilar circumstances,[16] similarly observed that "[h]abeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Id.* at 693 (internal citation omitted).

Petitioner's requested relief—a stay of his removal pending BIA review of the IJ's denial of his motion to reopen—does not self-evidently fall within the "historical core" of habeas relief. Ironically, his petition might be seen from one angle as one to *remain* in ICE custody. Nevertheless, the *St. Cyr* Court's reference to the "core" of habeas protections may be viewed as a floor, not a ceiling. *See* 533 U.S. at 301 ("*[A]t the absolute minimum*, the Suspension Clause protects the writ as it existed in 1789." (internal quotation marks omitted; emphasis added)). *St. Cyr* further observes that, until the statutory jurisdiction-stripping began to take hold in the 1990s, non-citizens could raise legal challenges to removal orders by way of habeas petitions. 533 U.S. at 306–10 (2001). Indeed, *St. Cyr* seems to assume that a removal order falls within the class of orders subject to habeas relief , and its analysis does not rest on the distinction between release from detention and other forms of relief.

In *Hamama*, the Sixth Circuit, examining *St. Cyr* and *Munaf*, concluded that petitioners who sought to prevent the execution of removal orders were not

---

[16] In *Munaf*, the petitioners were U.S. citizens who were in the custody of U.S. forces in Iraq while awaiting criminal prosecution in the Iraqi court system. *See Munaf*, 553 U.S. at 679–85. They filed habeas petitions and sought injunctions against their release to Iraqi authorities. *Id.* The Supreme Court determined that the writ of habeas corpus did not apply to such circumstances. *Id.* at 689–705.

seeking the kind of habeas relief (*i.e.,* release from custody) that the Suspension Clause protects. *See* 912 F.3d at 875–76.[17] I disagree.

Habeas corpus is the ultimate backstop against the executive's illegal application of force to detain a person. To my mind, "release" from detention does not encompass the (by hypothesis) illegal, involuntary transportation of that individual to a foreign nation. I think that the broad, remedial purposes of the Great Writ may—all other things being equal, *see infra*—encompass a challenge to an illegal order of removal.

I will therefore conclude what *Hamama* assumed *arguendo*: that the effect of § 1252(g) is to limit otherwise-available habeas relief. I proceed to the second step of the Suspension Clause analysis: whether "adequate substitute procedures" nevertheless remain available.

### (b) Adequacy of alternatives to habeas relief.

As noted above, the Suspension Clause does not bar a limitation on habeas jurisdiction if adequate substitute procedures are in place. I conclude, however, that under the narrow circumstances of this case, substitute procedures are inadequate or unavailable.

Petitioner here seeks a stay of removal pending the BIA's review of the IJ's order denying his motion to reopen. (*See* DE 17). The alternatives to habeas relief in this court, he says, are inadequate for several reasons. Petitioner asserts that permitting his removal prior to a final decision would violate his due process rights and the APA, in that he would be "left without a timely forum for review." (*Id.* ¶¶ 26–30). He argues that

> [e]xecuting [his] removal order . . . without consideration of evidence of his past persecution, the attempts to harm him during the short period he was in Jamaica following his recent removal conlvicting [sic] with this Court's temporary restraining order, and

---

[17] The *Hamama* Court was perhaps less than certain that this principle was settled, however. Although this first-step issue should have been dispositive, the court nevertheless proceeded to the second step of a Suspension Clause analysis. Ultimately it concluded that the petitioners had an adequate alternative to habeas relief—namely, the petition-for-review process. *Id.* at 876–77.

> fear of future persecution, would violate U.S. statutory
> and international law because he is likely to be
> persecuted and tortured once again if removed to
> Jamaica.

(DE 26 at 11). The stay is thus sought as a step in the process of reopening the immigration proceeding and obtaining relief from the removal order.[18]

Initially, of course, Petitioner's due process forum consisted of proceedings before the Immigration Judge. After he was taken into immigration custody, Petitioner filed a motion to reopen his removal proceedings and to stay his removal. (DE 17 ¶ 18). He acknowledges that an IJ denied his motion, finding it untimely but also "determin[ing] that the motion failed to establish changed country conditions to warrant reopening to permit [Petitioner] to apply for relief." (*Id.* ¶ 19).[19]

The second layer of review is the BIA. Petitioner appealed this decision to the BIA and moved to stay his removal. (*Id.* ¶ 19, 21). The BIA denied Petitioner's motion to stay on the basis that "there is little likelihood that the appeal will be sustained." (DE 14-5). The BIA has not, however, ruled on the merits of the appeal.

The third layer of review is an appeal of the BIA's final decision to the U.S. Court of Appeals for the Second Circuit. That Court has full powers to adjudicate appeals from final orders of the immigration courts and to grant stays pending appeal. Indeed, it was in order to save § 1252(g) from a Suspension Clause challenge that Congress, in removing habeas jurisdiction, simultaneously lodged jurisdiction in the Courts of Appeals to hear petitions for review of immigration cases.

---

[18]    I note at the outset that alternative procedures are not considered inadequate merely because relief has been denied. The Suspension Clause does not guarantee success; it requires an adequate forum for presentation of claims.

[19]    Petitioner does not seem to be claiming that conditions have changed in Jamaica since 2009. Rather, he claims that his decision to cooperate with the U.S. government subsequently made Jamaica a dangerous place for him.

Court of Appeals review is an integral, constitutionally required component of that review scheme; without it, § 1252(g) would violate the Suspension Clause. *Hamama* has held, and I agree, that "[w]hen Congress stripped the courts of jurisdiction to grant habeas relief in § 1252(g), it provided aliens with an alternative method to challenge the legality of removal orders: a motion to reopen followed by a petition for review filed in a court of appeals. *See* 8 U.S.C. § 1252(a)(5), (2)(D). Because this process provides an alien with the same scope of relief as habeas, the REAL ID Act does not violate the Suspension Clause." 912 F.3d at 876; *see also Gonzalez-Lora*, 629 F. App'x at 402 ("[W]hile we have acknowledged that the Suspension Clause requires at least some judicial review of deportation cases, we have also held that the REAL ID Act's limitations on the petition right are constitutional." (internal quotation marks omitted)). Thus, in general, the Courts of Appeals have rejected Suspension Clause challenges on the ground that a motion to reopen plus a petition for review in the court of appeals would be an adequate substitute for habeas corpus. *See, e.g.*, *Iasu v. Smith*, 511 F.3d 881, 893 (9th Cir. 2007) (rejecting as-applied challenge); *Mohamed v. Gonzales*, 477 F.3d 522, 526 (8th Cir. 2007) (same); *Alexandre v. U.S. Att'y Gen.*, 452 F.3d 1204, 1206 (11th Cir. 2006) (per curiam) (rejecting facial challenge).[20]

For all of these reasons, I, too, hold that the jurisdiction-stripping provisions of § 1252 do not *facially* run afoul of the Suspension Clause, and must be deemed *facially* effective.

That, however, does not end the matter. I must also consider whether the alternative remedy is adequate under the circumstances of this case. I find that, under these unusual circumstances, the alternative remedy is not

---

[20]  Petitioner objects that the IJ's decision to deny Petitioner's motion to reopen was premised, at least in part, on grounds of untimeliness, rather than the merits of the claim. That relief was denied on procedural grounds does not undermine the adequacy of the alternative procedure for purposes of the Suspension Clause analysis. *See Gonzalaez-Lora v. Warden Fort Dix FCI*, 629 F. App'x 400, 402 (3d Cir. 2015) ("[T]he fact that the argument failed due to lack of exhaustion does not demonstrate that his remedies were inadequate or ineffective.").

adequate. Administrative proceedings, followed by Court of Appeals review, are not adequate here unless supplemented by a stay *pendente lite.*

The alternative remedy proposed by the government is that Petitioner be deported to Jamaica, and that he assert his appeal rights from there. It is true that in general, a petition for review can be pursued from abroad. *See generally Nken v. Holder,* 556 U.S. 418, 435, 129 S. Ct. 1749 (2009). Not so here, however.

Petitioner alleges plausibly that because of his cooperation with the United States government in the Dudus prosecution, he would likely be killed if he is returned to Jamaica. Dudus, the head of a violent drug trafficking organization, exercised control over parts of Kingston, the police, and certain political figures; Dudus's aunt threatened him during the trial; and, since his testimony, his sister's house was burned down, the house of his children's mother was bombed, six of his cousins have been murdered, and his father was forced to flee the country. Petitioner alleges that he was threatened when he was involuntarily returned to Jamaica in late May. The government offers no factual response to these contentions.

I find it quite likely that a person in that position in Jamaica—in hiding, and under a threat of death— could not effectively litigate an immigration appeal in the BIA or the Court of Appeals. Not to put too fine a point on it, the death threats, if carried out, would moot and defeat the review process.

A narrow, as-applied exception to the § 1252(g) bar has been recognized in the very few cases with comparable facts.

The scene is set by the opinion of the Second Circuit in *Ragbir,* which held that the Suspension Clause served to preserve a modicum of district court jurisdiction despite § 1252(g). There, the parties did not "dispute that Ragbir ha[d] no 'adequate substitute' for a habeas petition" under the circumstances. *Ragbir,* 923 F.3d at 74. Unlike the claims in *Hamama,* "Ragbir's constitutional claims arose only after his removal order became final and after he had taken full advantage of the review process prescribed by statute, including filling a

petition for review and the one motion to reopen to which he was entitled." *Id.* at 74 n.27 (emphasis added). Petitioner here, like Ragbir, seeks to avoid removal based on circumstances that arose after the time for a challenge had passed. Unlike Ragbir, he is still in the midst of a petition to reopen (although the IJ has rejected it as untimely). But this case shares with *Ragbir* a procedural posture that tends to render his alternative remedies ineffectual, and therefore requires that the residual habeas remedy be preserved.

Closer factually to this case is *Compere v. Nielsen*, 358 F. Supp. 3d 170 (D.N.H. 2019), *app. pending*. As in our case, that petitioner was threatened with immediate removal. A motion to reopen technically remained available; the court acknowledged that, in general, removal does not deprive a petitioner of the ability to litigate a motion to reopen from abroad. Under the circumstances of that case, however, removal to Haiti would "make it impossible for [petitioner Compere] to litigate his motion to reopen." *Id.* at 180–81. He faced the likelihood of official detention for some period upon his arrival in Haiti, and more importantly, like Petitioner here, he faced the likelihood of violent reprisals. The court therefore held as follows:

> Taken in combination—the possibility of detention while awaiting the drug task force, the potential that he will be detained in temporary housing if his uncle is unable to retrieve him, the security threats under which he will live when he is housed with Mr. Renois—the record demonstrates that, more likely than not, Compere would be unable to litigate his motion to reopen if he is removed to Haiti.

*Id.* at 182. The court ordered relief limited to "a stay of removal that will remain in place until Compere's motion to reopen is resolved and he has been given an opportunity to appeal any adverse ruling." *Id.*

*Devitri v. Cronen*, 289 F. Supp. 3d 287 (D. Mass. 2018) is fairly similar. There, the U.S. District Court for the District of Massachusetts concluded that the Suspension Clause applied because the petitioners, who were not detained, were being threatened with removal before the BIA had adjudicated their motions to stay removal. *See id.* at 289. As in our case, those petitioners,

denied a stay, would "be removed back to the very country where they fear persecution and torture while awaiting a decision on whether they should be subject to removal because of their fears of persecution and torture." *Id.* at 294. Under such extreme circumstances, the court found that petitioners had demonstrated "a likelihood of success on their due process claim that they will suffer prejudice through a denial of a meaningful opportunity to have a motion to reopen and motion to stay ruled on by the BIA and Court of Appeals prior to removal to a country where they have a credible fear of persecution." *Id.* at 295. The court therefore granted a stay that did "no more than allow[ petitioners] to use the administrative and judicial procedures that Congress designed and the Constitution requires." *Id.* at 298.

Finally, in *Ibrahim v. Acosta*, No. 17-24574, 2018 WL 582520 (S.D. Fla. Jan. 26, 2018), the U.S. District Court for the Southern District of Florida considered a putative class action on behalf of Somali nationals subject to orders of removal. They sought to reopen the orders of removal based on changed circumstances, citing the United Nations Convention Against Torture. Renewed violence and publicity surrounding a botched deportation attempt, they alleged, exposed them to likely reprisal if they returned to Somalia. In addition to motions in the immigration proceedings, they sought a stay of deportation from the district court, in order to permit them to litigate their case. *Id.* at *3–*4. In conducting a Suspension Clause analysis, the court concluded that, "[w]hile the motion to reopen process is facially adequate, it does not provide an adequate and effective remedy for the exceptional circumstances of this case." *Id.* at *5–6. It took jurisdiction and granted a stay as follows:

> As applied in these circumstances, the jurisdictional bar in 8 U.S.C. § 1252(g) would preclude Petitioners from raising their new legal claims in a manner which comports with the law, in violation of the Suspension Clause. Therefore, the Court finds that the jurisdiction stripping provisions of the REAL ID Act are unconstitutional as applied to Petitioners, based on the extraordinary circumstances of this case, because it suspends

their right to habeas relief without providing an adequate and
effective alternative.

*Id.* at *6.

Here, it cannot be said that proceedings on the motion to reopen have
literally been exhausted, as in *Ragbir*. Nevertheless, this case shares with
*Ragbir, Compere, Devitri,* and *Ibrahim* a key determinative factor: The
constitutionally required adequate alternative remedy has been rendered
ineffective. As in *Compere* and *Devitri,* Petitioner here faces potential violence if
he is returned, *pendente lite,* to the very locus of the threat. *See Devitri,* 289 F.
Supp. 3d at 294 ("[T]hey will be removed back to the very country where they
fear persecution and torture while awaiting a decision on whether they should
be subject to removal because of their fears of persecution and torture."). The
constitutionally required review process cannot proceed adequately under
those circumstances.

Further, as in *Ibrahim,* the peculiar timing of events has rendered
ordinary review ineffectual. This Petitioner's procedural quandary arises
because his cooperation (the circumstance that places him in danger) arose
long after the time to challenge his 2009 order of removal had passed. He is
attempting to reopen that decision, but in the meantime, he occupies a
jurisdictional no-man's land. Court of Appeals review, remember, is the very
*reason* that this court can constitutionally be denied habeas jurisdiction; yet it
is that very lack of jurisdiction that permits the agency to act without judicial
intervention in a manner that will defeat the effectiveness of Court of Appeals
review.

To stop the spinning of this jurisdictional merry-go-round, only modest
measures are required. The minimum habeas jurisdiction that will ensure the
adequacy of the constitutionally required alternative procedures is a "bridge"
stay, permitting Petitioner to remain in the United States until administrative
proceedings are concluded and an appeal may be taken to the Court of
Appeals, if necessary. To ensure that the alternative to the writ, required by the

Suspension Clause, is adequate, this Court must retain the residual habeas jurisdiction to consider and, if appropriate, grant such a stay.

### E.    Stay of Removal

Finally, having found that I possess jurisdiction, I consider whether to issue a stay. Such a stay is in the nature of an arrest of proceedings based on the certainty of injury to Petitioner's procedural and constitutional rights:

> A stay, by contrast [to an ordinary injunction], is "[t]he postponement or halting of a proceeding, judgment or the like." Stay, Black's Law Dictionary (9th ed. 2009). It is not an action against a party or individual. "[I]nstead of directing the conduct of a particular actor, a stay operates upon the judicial proceeding itself." *Nken v. Holder*, 556 U.S. 418, 428, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009). A stay is thus a temporary measure, put in place while the actual cause or claim is being adjudicated. A stay is not a challenge to the basis of removal or any action taken by the immigration authorities. The requested stay is merely a "temporary setting aside of the source of the Government's authority to remove," *id.* at 429, 129 S.Ct. 1749, while the court adjudicates the actual underlying cause or claim . . . .

*Ragbir v. United States*, No. 2:17-CV-1256-KM, 2018 WL 1446407, at *8 (D.N.J. Mar. 23, 2018), *appeal dismissed*, No. 18-2142, 2018 WL 6133744 (3d Cir. Nov. 15, 2018) (noting traditional equitable factors, adaptable to the circumstances of the case, of likelihood of success, irreparable harm, balancing harm to the government, and the public interest). I surveyed the court's traditional authority to issue such a stay in *Ragbir, id.* at *10–*12, albeit without the additional constitutional urgency of a violation of the Suspension Clause. That analysis is incorporated by reference here.

On likelihood of success, I must observe that this is not the usual preliminary injunction *pendente lite*, nor does this Court place itself in the position of reviewing the decisions of the IJ or the BIA, or handicapping Petitioner's chances on a hypothetical appeal. That, I believe, is not required by the Suspension Clause and hence would exceed the bounds of permissibility under Real ID. I am most moved here by the constitutional necessity of a stay under the Suspension Clause, *see supra,* and the likelihood of a violation of

Petitioner's procedural and constitutional rights if it is not granted. Petitioner may or may not prevail before the BIA or the Court of Appeals; the Constitution requires, however, that his opportunity to put his case be preserved.

Irreparable injury requires little or no discussion. While deportation might not inflict irreparable injury in every case, it does so here, for the reasons stated above.

The balance of harms and the public interest also weigh in favor of a stay. Petitioner's order of removal was entered ten years ago. For the last six years, the government has deferred action on his removal, based on his valuable cooperation in the Dudus case. There is no particular urgency to removing Petitioner now. The government was free, and remains free, to accelerate the disposition of the matter by the simple expedient of having the BIA render its final decision.

### IV. CONCLUSION

Petitioner makes a plausible claim that removal to Jamaica, delayed for many years and hardly urgent, would expose him to great danger based on his assistance to the prosecuting authorities in the United States. It does not seem to be too much to ask that he be permitted to pursue the constitutionally required process of review from the relative safety of a U.S. jail cell. To remove him to Jamaica now, I have found, will drain the review procedure of efficacy and violate the Suspension Clause. The Constitution requires, at a minimum, that this court retain the residual habeas jurisdiction to grant a stay so that the review process may unfold in an orderly and efficacious manner. I will therefore enter a separate order staying his removal until 14 days after the BIA renders its final decision.

DATED: September 3, 2019

KEVIN MCNULTY
United States District Judge